STATE v. RUBE BARBEE.

(Filed 14 May, 1924.)

1. **Constitutional Law—Contracts—Imprisonment—Debt—Statutes—Innkeeper—Boarding Houses.**

    The misdemeanor prescribed by C. S., 4284, for one who obtains lodging, food, or accommodations from an inn, boarding or lodging place, expressly applies, by the expression of the statute, when the contract therefor has been made with a fraudulent intent, and this intent also exists in his surreptitiously absconding and removing his baggage without having paid his bill, and this statute is not inhibited by Article I, section 16, of the State Constitution, as to imprisonment for the mere nonpayment of a debt, either in a civil action or by indictment.

**2. Same—Evidence.**

> In order to convict under the provisions of C. S., 4284, it is necessary for the State to show the fraudulent intent of the one who has failed or refused to pay for his lodging or food at an inn, boarding house, etc., or the like intent as to his surreptitiously leaving with his baggage without having paid his bill; and evidence tending only to show his inability to pay, under the circumstances, but his arrangement with the keeper of the inn or boarding house to pay in a certain way and within a fixed period after leaving, and his payment in part, and that his wife, remaining longer than he, thereafter took away his baggage without his knowledge or participation therein, and in the separation following he received no benefit therefrom, is insufficient for a conviction of the statutory offense.

APPEAL by defendant from *Harding, J.,* at January Term, 1924, of CABARRUS.

Indictment for wrongful and unlawful failure to pay a board bill to one Mrs. Cline, and for surreptitiously removing baggage from the boarding house of prosecutrix without paying his board bill. There was verdict of guilty, and from judgment thereon defendant appealed, assigning for error the refusal of his Honor to discuss the case at the close of the State's evidence as in judgment of nonsuit.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*
*Maness & Sherrin for defendant.*

HOKE, J. Our Constitution, Article I, section 16, provides that there shall be no imprisonment for debt except in cases of fraud, and the authoritative cases construing this and other like sections here and elsewhere are to the effect that the inhibition extends to imprisonment for the mere nonpayment of a debt either in a civil action or by indictment involving the power to imprison. *Minton v. Early,* 183 N. C., 200; *S. v. McRae,* 170 N. C., 712; *S. v. Griffin,* 154 N. C., 611; *S. v. Williams,* 150 N. C., 802; *Bailey v. State of Alabama,* 219 U. S., 219.

The statute under which the indictment is drawn, C. S., 4284, makes it a misdemeanor for one to obtain lodging and food or accommodation at an inn or boarding house or lodging house without paying therefor, with intent to defraud, or who obtains credit at such houses by any false pretense, or who, after obtaining such credit or accommodation at these places, absconds and surreptitiously removes his baggage therefrom without paying for his food, accommodation, etc.

It is clearly drawn in deference to the Constitutional provision above cited, and has been directly approved in *S. v. Hill,* 166 N. C., 298, on the ground that in order to a conviction under it there must have been

fraud or false pretense in the making of the contract, or that a defend-
ant should have absconded and surreptitiously removed his baggage
without paying his bill, both being terms indicating a fraudulent pur-
pose, and in several other decisions presenting the question, it has been
held that the penalty of imprisonment could not be imposed for the
mere failure or refusal to pay, under this or any statute of similar
import.

Thus, in *Minton v. Early, supra,* it was said: "But in our opinion
the statute referred to, imposing as it does the punishment of fine and
imprisonment for abandoning a tenancy or crop, without paying for
the advances made by the landlord, and without requiring any allega-
tion or proof of fraud, either in the inception or breach of the contract,
is in violation of our Constitutional provision, Article I, section 16,
which inhibits 'imprisonment for debt except in cases of fraud.'  This
has been virtually held in *S. v. Williams,* 150 N. C., 802, wherein the
Court decides, the present *Chief Justice* delivering the opinion, that
without averment of fraud, a bill of indictment under this section, then
Rev., 3366, should be quashed.  And, for the same reasons, the clause
of the statute making it indictable for a landlord to fail and refuse to
furnish advancements as per agreement is an invalid provision, for,
without either averment or proof of fraud, both are ordinary breaches
of contract, for which the parties charged may only be held for the civil
liability.  A similar decision appears in *S. v. Griffin,* 154 N. C., 611,
where a conviction, under C. S., 4281, Rev., 3431, for obtaining money,
etc., under a promise to begin certain work, and wilful breach, was
set aside for lack of any proof of fraud in the transaction other than
the obtaining of the advances under the promise to begin the work and
a failure to comply.  And the same general principle is approved and
applied by the Supreme Court of the United States in *Bailey v. Ala-
bama,* 219 U. S., 219, a decision which this Court recognized as con-
trolling in the *Griffin case, supra."*

And in *S. v. McRae, supra,* after setting aside a conviction under the
present statute on the grounds that the prosecutrix was not maintaining
a boarding house within the meaning of the statute, the opinion closes
with the additional reason, as follows: "There is also another fatal
objection to maintaining the prosecution, and that is, a failure to pay
is not sufficient evidence of an intent to defraud," citing *S. v. Griffin,*
154 N. C., 611.  *S. v. McRae* being a case where a defendant, having
boarded with the prosecutrix for nine weeks, under a promise to pay
$2.50 per week, left without making any payment.

Considering the record in view of these and similar cases, we are of
opinion that the conduct of defendant was not such as to justify or

45—187

permit the inference of criminality as defined and contemplated by the statute. The prosecutrix, the only witness for the State, testifying in chief as follows:

"Rube Barbee and his wife boarded with me. His wife came on 6 January and stayed until about 11 May. He worked at the mill and then he quit. He didn't exactly leave. He came back to get his meals. His wife said to him, 'Rube, you are going to leave the job and you can't pay Mrs. Cline.' And he said, 'You never mind, I will pay Mrs. Cline for my board if I don't work.'

"I told him I was living in the company's house and keeping boarders who worked in the mill. He said, 'I will be in Saturday morning and pay your board.' He always stayed out late, and I never saw him until two weeks after that. His wife went to her father's and brought Rube back home with her Sunday evening. He went in the mill Monday morning and they paid him up, and he said, 'They paid me up this morning and I will have to leave and go off and hunt a job. I will leave you $5 at the cafe or the barber shop.' I sent the little boy and got that. He said, 'Mrs. Cline, I will give you a written order to show you that I will pay you $25 the 25th day of February, and the balance in two weeks.' When he left his bill was $62.

"He went off and left his wife and two children with me. They stayed there from 15 February until about 11 May. He never did come back to pay me. His wife stayed there for about six weeks after Rube left before going to work, and she went to Concord and took out a warrant for Rube. Rube did not come back. She stayed after that until about 11 May. He did not pay her board or his. When his wife left she went to the trunk; she was going to her father's; she took away all the clothes that were fit to wear, and went to Rube's trunk and carried them off too. Rube did not come back to pay me. He never sent me any more money.

"His wife paid her board after she went to work, and paid while she was working. Rube Barbee owes me $102 for himself and children. He sent me a money order for $2 on board and said, 'I will pay you a little along until I get you paid.' He has never paid me any more. This was last July."

And from this, the only testimony offered, we find nothing beyond a failure or refusal to pay the debt, and as to taking away the clothes of defendant, which seems to have chiefly inspired the prosecution, that was done by his wife, and there is no evidence whatever that defendant either advised or procured it or that he had any knowledge of it. The last heard of the two, she was having him prosecuted for nonsupport, and there is nothing in the record to show that the wife took the clothes to him or that they have ever renewed their marital association.

---

As to defendant himself, when he lost his place at the mill and went away, avowedly to seek another job, he paid· $5 on account and gave her a written acknowledgment of the debt, and has since sent her $2 on it with a renewed promise of eventual payment. So far as he was con-cerned, he went away with nothing but what he was then wearing, leav-ing trunk and clothes at the boarding house, and there is not a particle of evidence to show that he has ever received either, or that he had any-thing to do with their removal.

On the facts presented we are of opinion, as stated, that the motion for nonsuit should have been allowed and the prosecution dismissed.

Reversed.