**STATE of Utah, Plaintiff and Respondent,**

v.

**Steven Charles LEONARD, Defendant and Appellant.**

**No. 18350.**

Supreme Court of Utah.

Sept. 27, 1985.

---

**3.** *State v. Pappas,* Utah, 696 P.2d 1188 (1985).

Jo Carol Nesset-Sale, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., J. Stephen Mikita, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

STEWART, Justice.

The defendant, Steven Charles Leonard, appeals from his jury conviction of theft of services having a value of more than $250 but not more than $1,000, a third degree felony. He argues that: (1) the evidence was insufficient to support the verdict; (2) the trial judge refused to allow defense counsel to withdraw as counsel prior to trial, even though it appeared that it would be necessary that she testify as a witness on the defendant's behalf; and (3) the defendant's counsel was denied effective cross-examination of the defendant's hostile witness. We reverse and remand.

On February 10, 1981, the defendant checked into the Tri-Arc Travel Lodge in Salt Lake City. He signed the guest registration card using his own name, an acquaintance's phone number, and the address which appeared on his driver's license but which was not his then current address. He paid for the first nights lodging in cash. On February 11, 1981, he again paid his full hotel bill in cash. After the payment on the 11th, no more payments were made. By February 14th, the accumulated bill for the defendant's room was over $100. When the defendant did not respond to the hotel's requests for him to contact the desk to pay the accumulated bill, his hotel room was locked.

On February 15th, the defendant and another male, James Borland, reported to the front desk supervisor that they were locked out of their room. The defendant explained that he had been stranded in Park City. He promised to pay the outstanding $352.40 owed on the hotel and restaurant bills that were in his name the following day when he could go to his credit union for the necessary money. The defendant was let back into his room.

The following day the resident hotel manager called the defendant's room. The person who answered the phone responded to the defendant's name and promised to pay the bill. Instead, the defendant and Borland vacated the room. The defendant was arrested shortly thereafter and charged with theft of services.

Before trial, the defendant's counsel, Jo Carol Nesset-Sale, an attorney in the legal defender's office, advised the trial court that she would have to testify on behalf of her client. It appeared that Borland would assert the privilege against self-incrimination and not testify in favor of the defendant as originally expected; she thought that it would be necessary to testify to statements made to her by Borland pertaining to defendant's asserted innocence. Nesset-Sale moved for a mistrial after the jury was sworn but before any evidence was adduced so that she could withdraw from the case. The trial judge ruled that Nesset-Sale should continue to represent defendant until she actually testified, when the court would appoint co-counsel to examine Nesset-Sale and argue her credibility to the jury.

At trial the defendant's witness, James Borland, invoked his Fifth Amendment rights when questioned concerning his participation in renting and using the hotel room. However, after the prosecution offered Borland limited immunity from prosecution for the crimes of theft by deception and theft of services at the Tri-Arc, Borland took the stand and testified that he had told the defendant he would help him pay the bill, but that he had not told the hotel staff he would pay the bill. On cross examination, he admitted telling Nesset-Sale that he had promised someone on the hotel staff that he would pay the hotel bill, but claimed that he made the statements only because of his friendship with defendant.

To impeach Borland's testimony and to provide substantive evidence that it was Borland who had promised to pay, Nesset-Sale testified that Borland had told her that he had talked to the hotel staff and had promised to pay the bill.

I.

The defendant contends that the trial judge committed reversible error in deny-

ing defendant's motion to allow his counsel, Nessett-Sale, to withdraw from the case when it became apparent that she would be obliged to testify on her client's behalf.

Disciplinary Rule 5–102(A) of the Revised Rules of Professional Conduct of the Utah State Bar, provides:

> If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).[1]

"[A]pplication of this rule does not depend on whether an attorney will be called but rather, as the Code provides, on whether he 'ought to be called as a witness' in the underlying action." *Groper v. Taff,* 717 F.2d 1415, 1418 (D.C.Cir.1983) (per curiam); *J.P. Foley & Co. v. Vanderbilt,* 523 F.2d 1357, 1359 (2d Cir.1975); *SMI Industries Canada Ltd. v. Caelter Industries,* 586 F.Supp. 808, 817 (N.D.N.Y.1984); *Norman Norell, Inc. v. Federated Department Stores,* 450 F.Supp. 127, 129 (S.D.N.Y. 1978). There is no distinction to be made between a witness in the case-in-chief and a rebuttal witness. *Eurocom, SA v. Mahoney, Cohen & Co.,* 522 F.Supp. 1179, 1181 (S.D.N.Y.1981).

Defendant's attorney, Nesset-Sale acted appropriately and timely in seeking to withdraw when it appeared that she might have to testify and when she later moved for a mistrial. By these actions she sought to avoid committing an ethical violation and prejudicing her client's case by subjecting her own testimony on a critical issue in the case to an attack for bias. When the trial judge refused to allow her to withdraw, she had no alternative but to continue as counsel for her client, and to testify as a witness for the defendant.

An attorney's breach of a State Bar disciplinary rule in connection with the trial of a case, whether voluntary or compelled, does not necessarily establish grounds for a reversal. The Code of Professional Responsiblity does not delineate rules of evidence and procedure; it only states standards to govern an attorney's conduct. *See Rosen v. NLRB,* 735 F.2d 564, 575 (D.C.Cir.1984); *J.P. Foley & Co. v. Vanderbilt,* 523 F.2d 1357, 1359–60 (2d Cir.1975) (Gurfein, J., concurring).

The great weight of authority, however, is that it is error for counsel to continue representation where he or she is or ought to be a witness with respect to issues that are not incidental or insignificant. It is widely recognized that the credibility of an attorney who acts as a witness in his client's case, as well as his effectiveness as an attorney in that case, may be seriously compromised. *See, e.g., Rosen v. NLRB,* 735 F.2d 564, 575 (D.C.Cir.1984); *Groper v. Taff,* 717 F.2d 1415, 1418 (D.C.Cir.1983); *United Pacific Insurance Co. v. Zardenetta,* Tex.App., 661 S.W.2d 244, 247–48 (1983). "It has been suggested that once [counsel] becomes a witness his personal credibility is placed at issue before the jury and this may lessen his effectiveness as an advocate. It has also been indicated that his involvement as a witness for his client causes him to be more easily subject to impeachment for interest and thus lessens his effectiveness as a witness." *Commonwealth v. Floyd,* 494 Pa. 537, 431 A.2d 984, 989 (1981) (citations omitted). *See also* Poteat, *Disqualification of Counsel under the Advocate-Witness Rule: Fair or Futile?,* 48 U.Cinn.L.Rev. 794, 797–98 (1979).

Experience teaches that the roles of advocate and witness should be separated. If an attorney attempts to combine the two roles, he is likely to be less effective in each role. "That counsel should avoid appearing both as advocate and witness except under special circumstances is beyond question." *United States v. Morris,* 714 F.2d 669, 671 (7th Cir.1983). Utah Ethical Consideration 5–9 of the Revised Code of

---

**1.** None of the exceptions in DR 5–101(B)(1) through (4) apply here.

Professional Responsibility embodies the above considerations: "If a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness." Bias of a witness, whether actual or assumed, on a key point has a high potential for prejudicing a jury's assessment of a witness' credibility.

This Court has repeatedly recognized the critical effect that a fact finder's perception of a witness' bias may have on the outcome of a case. *See, e.g., State v. Chesnut,* Utah, 621 P.2d 1228, 1233 (1980); *State v. Maestas,* Utah, 564 P.2d 1386, 1388 (1977). Nesset-Sale's testimony was not on a collateral issue; the testimony was critical to the jury's decision in this case. Her testimony, under our rules of evidence, was admissible both for the truth of the assertions and for impeachment purposes. Whether or not Borland had initially promised both the defendant and the hotel personnel that he would pay for the hotel room was important to the defendant's theory of the case. Had the jury believed Nesset-Sale's testimony, the jury may not have convicted the defendant or it may have convicted of a lesser crime.

■ Under some circumstances the refusal to grant an attorney's motion to withdraw as counsel might not be reversible error, but where, as here, the testimony was important to the defendant's case, the refusal was not harmless error. When counsel makes a timely and good faith application to withdraw because of the need to preserve important evidence and not just to obtain some tactical advantage, a motion to withdraw should be granted. In sum, because Nesset-Sale was required to act for the defendant both as counsel and as a witness, the defendant was deprived of the value of untainted testimony favorable to his defense and of the services of an attorney who had not been compromised by acting both as attorney and witness.

II.

We turn next to the defendant's claim that the evidence was insufficient to support the conviction. The defendant was convicted of obtaining services by deception in violation of U.C.A., 1953, § 76–6–409. Section 76–6–409 provides: "(1) A person commits theft if he obtains services which he knows are available only for compensation by deception, threat, force, or any other means designed to avoid the due payment therefore." [2]

■ Fraudulent intent is the gravamen of the offense of theft of services. Without proof of a criminal state of mind, the law would imprison people for mere failure to pay a debt, a practice not sanctioned in this or any other state of this nation. Utah Const. Article I, Section 16. *See, e.g., R.B. Cottonreeder v. State,* Ala. Crim.App., 389 So.2d 1169, 1173 (1980); *Johnson v. State,* 159 Ga.App. 497, 283 S.E.2d 711, 713 (1981); *State v. Harris,* 6 Kan.App.2d 721, 633 P.2d 1171, 1173–74 (1981); *Butts v. Commonwealth,* Ky., 581 S.W.2d 565, 567 (1979); *People v. Astor,* 269 App.Div. 250, 55 N.Y.S.2d 283, 284 (1945); *State v. Barbee,* 187 N.C. 703, 122 S.E. 753 (1924). *See also* 43A C.J.S. *Inns, Hotels, and Eating Places* § 12 at 813 (1978). The rule is that a person who in good faith accepts the benefit of services for which he plans to pay later cannot be convicted of theft even though he subsequently does not recompense the provider of services. The remedy in such a case is a civil suit for breach of contract. Obviously, however, a defendant's denial of a fraudulent intent at the time of receiving the services is not binding. As is often the case, circumstantial evidence may speak louder than words.

■ The defendant made an implied promise to pay for the lodging and services provided for the nights of February 12th, 13th, and 14th. However, the implied promise to pay and the subsequent failure

---

**2.** By statute, "services" is defined to include use of hotel and restaurant facilities. § 76–6–409(3).

to pay the bill, standing alone, are legally insufficient to show the elements of deception required by Utah law. U.C.A., 1953, § 76–6–401(5)(e) provides that deception occurs when a person:

> Promises performance that is likely to affect the judgment of another in the transaction, which performance the actor does not intend to perform or knows will not be performed; *provided, however, that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.*

(Emphasis added.) This statute requires that the prosecution prove fraudulent intent by more than just a mere failure to pay. Some additional evidence is required to sustain a finding of fraudulent intent. In short, a conviction cannot be sustained merely on proof that a person acquired lodging and failed to pay for it.

■ Numerous types of circumstantial evidence may show fraudulent intent. For example, circumstantial evidence that a defendant had no money and no prospect of acquiring sufficient money when it was time to pay might be sufficient, as would express false promises, or deception as to the identity of the renter. However, evidence that establishes no more than a breach of an express or implied contract is not sufficient to prove the crime of theft of services, and a jury should be so instructed.[3]

Clearly, the defendant did not commit theft of the hotel services for the nights of February 10th and 11th. He paid the charges for those days. The defendant's conduct on February 15th, and possibly the 16th might, however, be found criminally culpable on retrial of this matter. It is on this point that Nesset-Sale's testimony may prove critical.

### III.

The final issue raised by the defendant is whether the defendant's Sixth Amendment confrontation right was abridged by the trial judge's limitations on the cross-examination of Borland by Nesset-Sale. The Sixth Amendment guarantees a criminal defendant the right to confront and cross-examine adverse witnesses. "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). The record shows that Borland had previously told Nesset-Sale that he promised both the defendant and the hotel personnel he would pay the hotel charges. When Borland changed his testimony to say that it was not he who promised a hotel employee that he would pay, he attributed the change to a falling out with the defendant. However, Nesset-Sale established on cross-examination that Borland was reluctant to be a witness and that he testified for the prosecution because he had been granted immunity. Nesset-Sale's efforts to obtain from Borland a reason why he had initially intended to refuse to testify, and information pertaining to the grant of immunity, were cut off by the trial judge who repeatedly sustained objections to such questions.

■ We believe that those rulings improperly restricted the defendant's right of cross examination. "There are few subjects, perhaps, upon which [the Supreme

---

**3.** Failure to pay raises a presumption of fraudulent intent in some jurisdictions. *See* Haw.Rev. Stat. § 708–830(4), (Supp.1984); Ill.Ann.Stat. ch. 71 § 4b (Smith-Hurd 1959); Iowa Code § 714.- 1(3) (1983); Neb.Rev.Stat. § 28–515 (1979); N.D.Cent. Code § 12.1–23–03 (1976); Or.Rev. Stat. § 164.125(3) (1983); Pa.Stat.Ann. tit. 18, § 3926(a)(3) (Purdon 1983); Tex. Penal Code Ann. § 31.04(b)(1) (Vernon Supp.1985). *See also Prowell v. State,* Tex.Crim.App., 541 S.W.2d 432 (1976), applying the presumption in a theft of services case. A presumption of fraudulent intent is also included in the Model Penal Code's theft of services provision, § 223.7(1), "[w]here compensation for service is ordinarily paid immediately upon the rendering of such service, as in the case of hotels and restaurants...." Whether a presumption of fraudulent intent would pass constitutional muster is an issue we do not address. *See generally Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

Court] and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." *Pointer v. Texas,* 380 U.S. 400, 405, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965). The right to test the believability of a witness on cross-examination includes the right to show a witness' possible bias or interest. The exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. *Greene v. McElroy,* 360 U.S. 474, 496, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959).

The trial judge, of course, has discretion to limit cross-examination "to preclude repetitive and unduly harassing interrogation," *Davis v. Alaska,* 415 U.S. at 316, 94 S.Ct. at 1110, or to preserve a witness' constitutional immunity from self-incrimination. *Id.* at 320, 94 S.Ct. at 1112. However, the scope of cross-examination as to credibility is and must be broad if it is to fulfill its designated purpose of exposing bias and purging testimony of intended or unintended error. Full exposure of a witness' bias or prejudice is essential if a jury is to be able to fully assess the existence and extent of the witness' bias. *Stevens v. Bordenkircher,* 746 F.2d 342, 347 (6th Cir. 1984); *United States v. Bleckner,* 601 F.2d 382, 385 (9th Cir.1979).

Because cross-examination for bias is "so vital a constitutional right," *Davis v. Alaska,* 415 U.S. at 320, 94 S.Ct. at 1112, and was unduly restricted in this case, we hold that the trial court erred in limiting the defendant's cross-examination of Borland. The defendant had a right to put before the jury the reasons why Borland had changed his testimony, why he initially refused to testify, and any differences that might have existed between his initial statements to the police regarding the crime and his trial testimony after immunity was granted. Of particular significance to this line of inquiry was the information concerning the terms and conditions surrounding the grant of immunity to Borland. Inquiry into such matters is particularly important where Borland may have been either an accomplice or otherwise indictable for the same offense. *See United States v. Tracey,* 675 F.2d 433, 438 (1st Cir.1982).

The granting of immunity often raises serious problems as to the credibility of a witness. *Hoover v. State of Maryland,* 714 F.2d 301, 305 (4th Cir.1983), makes clear that mere knowledge that a witness has been granted immunity does not provide the jury with sufficient knowledge to assess a witness' bias. "The likelihood that a prosecution witness is shading or even contriving testimony adverse to the defendant reasonably can be viewed as directly correlated with the perceived value of such testimony to the witness." *Id.* at 305. Assessment of a witness' bias therefore requires fuller inquiry into the terms and conditions of the grant of immunity and a full explication where necessary as to why a witness would not have testified without the grant of immunity.

Reversed and remanded for a new trial.

HALL, C.J., and HOWE, DURHAM and ZIMMERMAN, JJ., concur.