Argued and submitted January 31, affirmed December 17, 1986, reconsideration
denied February 13, petition for review denied March 17, 1987 (303 Or 74)

# STATE OF OREGON,
*Respondent,*

*v.*

# CHARLES LeCLAIR,
*Appellant.*

(84-1982; CA A35701)

730 P2d 609

Stephen J. Williams, Deputy Public Defender, Salem,

argued the cause and filed the brief for appellant. With him on the brief was Gary D. Babock, Public Defender, Salem.

Linda DeVries Grimms, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent. With her on the brief were Dave Frohnmayer, Attorney General,and James E. Mountain, Jr. Solicitor General, Salem.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

NEWMAN, J.

**NEWMAN, J.**

Defendant appeals his convictions for attempted rape in the first degree, ORS 163.375, and sexual abuse in the first degree. ORS 163.425. He argues that the court, when it limited his cross-examination of the victim and when it refused to admit impeachment evidence, made evidential errors and violated his rights to confrontation under the state and federal constitutions. We affirm.

Defendant lived with the victim, then age seven, her mother and her sister for two weeks in September, 1984. At the time, he was romantically involved with the mother. The victim claimed that during the two week period defendant abused her. She testified that while she was taking a bath he entered the bathroom, naked and carrying a kitchen knife. He placed the knife on the sink and got into the tub with her. The victim used anatomically correct dolls to show that defendant had sexual contact with her. He left when he heard the mother arrive home and threatened to stab her if she reported the incident to her mother. The state offered other evidence that tended to corroborate the victim's story. The victim's testimony, however, was critical to the case.

Defendant testified and denied that he had had sexual contact with the victim or that he had ever got into the bath tub with her. Defendant also offered the testimony of a pediatrician who had examined the victim late in September after the alleged incident. The pediatrician testified that he found "no evidence that a penis could have penetrated in that little girl" and no other signs of abuse.

Before trial the state asked the court to forbid defendant from asking the victim about other accusations of sexual abuse she had allegedly made and from offering related evidence. The court postponed a decision on the state's motion until it could ascertain the nature of defendant's evidence. At trial, defendant made an offer of proof, out of the presence of the jury, that in 1981, the victim, then age four, had made a false accusation of sexual abuse. He offered a 1981 Children's Services Division (CSD) report, which stated:

"[The victim's mother] reported * * * an incident that had just occured between her daughter * * *, and a young neighbor boy. Mother discovered [daughter] and 'Buck' with their pants down and [she] had her mouth on 'Buck's' penis. When

[mother] confronted her about the situation [daughter] stated that 'Dennis' taught her how to do that. It is known that 'Dennis,' an adult male, had been living in the [mother's] home with [mother] but no longer resides there. [Mother] requested our assistance in dealing with the situation.

"* * * * *

"[We] met with [mother] and her daughter, * * * but [daughter] was unwilling to talk with us. Because of the fact that 'Dennis' no longer lives in the [mother's] home and has no contact whatsoever with [daughter] we will not pursue that aspect of the report. However, we will continue to handle [the mother's] case as a preventive-restorative case to aid in her dealings with her daughter.

"[Daughter] told her mother that Dennis * * * 'taught' her how to suck his penis. However [daughter] was unwilling to talk * * *. At this time we will continue to work with the [mother and daughter] regarding parenting, etc. but will treat the sexual abuse report as unsubstantiated."

Out of the presence of the jury, the court allowed defendant to cross-examine the victim and her mother about the report. The victim testified that she had talked with a CSD worker in 1981, but she denied that the incident with "Buck" ever occurred or that she had told her mother that "Dennis taught her how to do that." The mother denied that she had made a report to CSD, that she had discovered the victim with her mouth on Buck's penis or that the victim had made an allegation against Dennis.

Defendant also offered a report of a doctor who examined the victim at a hospital on October 14, 1984. It stated:

"Mother and a neighborhood associate of mothers have heard some 12-year-old twins in the neighborhood who were talking about molesting or having intercourse with [daughter]. Mother states that in discussing this with [daughter] she has been able to get [her] to relate initially unwillingly and then more willingly that this 12 year old boy has penetrated her with his penis, has used his tongue on her bottom, has used his fingers in her bottom, and today threatened her with a knife, indicating that he was going to stab her in the throat and in the bottom. This boy's name apparently was Jamie. Mother contacted the police. The police investigated but said that they could do nothing. Mother, in frustration brought [daugther] to the Emergency Room to have her evaluated.

"* * * * *

"EXAM: Reveals her to be a very shy, embarrassed and not at all verbally willing or cooperative 7-year-old. She has no evidence of external abuse or bruising of her upper or lower extremeties or trunk. Evaluation of her bottom essentially confirms what Dr. Thoren apparently reiterated before. She has a perforate hymen, somewhat ragged, it gapes to 2 mm. inferiorly when she relaxes in the supine position. I see no evidence of any external irritation, scratches, bruising or trauma. I would suspect that if the 12-year-old had penetrated her today, that there would be some evidence of trauma and I see none.

"* * * * *

"IMPRESSION: 1. SUSPECTED MOLESTATION.

"On the basis of this evaluation, I cannot confirm or deny whether the child has been touched or had vaginal penetration with small objects or fingers."

Out of the presence of the jury, defendant cross-examined the victim, who confirmed the incident in the doctor's report. He also called "Jamie," who testified that he had never had sexual contact with the victim.

The court held that none of defendant's evidence was admissible and forbade defense counsel from cross-examining the victim in the presence of the jury about the incidents. It stated that that line of inquiry would unduly shift the focus of the trial from the incident involving defendant to the other incidents.

"[W]e would get people talking about not only two other incidences [sic] and trying those, but then we get into people saying who is truthful and who is not, and I don't know whether I would allow that, it would depend on the circumstances, but allowing it would then really get into confusion of the issues * * *."

The court was also concerned that admission would violate OEC 412. As to the 1981 incident, the court noted that it was "somewhat remote" and that the report was made by the mother and not the daughter.

Defendant asserts that the court should have allowed him to present evidence to the jury of the 1981 and 1984

incidents, including cross-examination of the victim.[1] The assignment involves two rules of evidence. OEC 412, the so-called Rape Shield Law, prohibits a defendant, in most circumstances, from introducing evidence of specific instances of a victim's "past sexual behavior."[2] OEC 608(2) states:

> "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the credibility of the witness, other than conviction of crime as provided in [OEC 609], may not be proved by extrinsic evidence. Further, such specific instances of conduct may not, even if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness."

Defendant offered the evidence in question to impeach the victim. He contends that the 1981 and 1984 incidents of alleged sexual conduct never happened, that the victim's accusations were false and that, therefore, they show that the victim is not credible.

██ Evidence of previous *false accusations* by an alleged victim is not evidence of *past sexual behavior* within the

---

[1] As the court stated:

"Now, as I understand it, what you want * * * is to be allowed to ask her on cross examination * * * a two-part question, 'Have you accused anybody else of sexual abuse of you,' one, and if she answers 'Yes,' then your next question would be, 'Was that a false complaint,' in effect. I mean, I am not putting words in your mouth, but that is, in effect, what you want to ask on cross examination?"

[2] OEC 412 provides in pertinent part:

"(1) Notwithstanding any other provision of law, in a prosecution for a crime described in ORS 163.355 to 163.425, or in a prosecution for an attempt to commit such a crime, reputation or opinion evidence of the past sexual behavior of an alleged victim of such crime is not admissible.

"(2) Notwithstanding any other provision of law, in a prosecution for a crime described in ORS 163.355 to 163.425, or in a prosecution for an attempt to commit such a crime, evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless such evidence other than reputation or opinion evidence is:

"(a) Admitted in accordance with paragraphs (a) and (b) of subsection (3) of this section; and

"(b) Is evidence that:

"(A) Relates to the motive or bias of the alleged victim; or

"(B) Is necessary to rebut or explain scientific or medical evidence offered by the state; or

"(C) Is otherwise constitutionally required to be admitted."

meaning of the Rape Shield Law and, therefore, is not inadmissible under OEC 412. *See Cox v. State,* 51 Md App 271, 281, 443 A2d 607 (1982); *see also Com. v. Bohannon,* 376 Mass 90, 95, 378 NE2d 987 (1978); *State v. Baron,* 58 NC App 150, 153, 292 SE2d 741 (1982). OEC 608(2), however, forbids any inquiry or cross-examination into specific incidents of conduct for impeachment purposes.[3] Specific instances of conduct include false statements. *See Davis v. Dean,* 221 Or 110, 114, 350 P2d 910 (1960) (decided under *former* ORS 45.600, which was substantially the same as OEC 608(2)); Kirkpatrick, *Oregon Evidence* 240 (1982).

■ As for the October, 1984, incident, the victim accused "Jamie" of sexual contact with her and testified out of the presence of the jury that the incident had occurred. He denied it. Defendant sought to establish that the victim's accusation against "Jamie" was false. Under OEC 608(2), the court's decision to exclude defendant's evidence and to forbid cross-examination about the incident was correct. As for the 1981 incident, the CSD report stated that the mother had informed it that the victim, then only four years old, had told her that "Dennis taught her how to do that" but that the victim was unwilling to talk to CSD. Out of the presence of the jury at trial, she denied that the incident had occurred or that she had made the statement to her mother, and the mother agreed. Although the evidence that the victim made a false accusation in 1981 is weak, it has some probative value. Under OEC 608(2), however, the court correctly excluded the evidence and forbade cross-examination about the incident.

Defendant also argues that the court's ruling deprived him of his confrontation rights under Article I, section 11, of the Oregon Constitution and under the Sixth Amendment.[4] We analyze, first, defendant's argument under

---

[3] We note that FRE 608 is different in that it allows inquiry into specific instances of conduct on cross-examination.

[4] Article I, section 11, provides:

"In all criminal prosecutions, the accused shall have the right * * * to meet the witnesses face to face * * *."

The Sixth Amendment provides:

"In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *."

Article I, section 11. Because neither party offers an argument for interpreting the state provision, as it is applicable here, different from the Sixth Amendment, we utilize Sixth Amendment cases in our interpretation of Article I, section 11. *See State v. Campbell,* 299 Or 633, 648, 705 P2d 694 (1985).

■ In *Davis v. Alaska,* 415 US 308, 315, 94 S Ct 1105, 39 L Ed 2d 347 (1974), the Supreme Court held that the right of confrontation "means more than being allowed to confront the witnesses physically." It includes the right to engage in effective cross-examination. *See also State v. Herrera,* 286 Or 349, 353, 594 P2d 823 (1979).[5] In *Davis,* the Court reversed the conviction of a defendant who, because of a state evidence rule, was denied the opportunity to explore possible bias of a witness on cross-examination. *See also Delaware v. Van Arsdall,* ___ US ___, 106 S Ct 1431, 89 L Ed 2d 674 (1986). We followed *Davis* in *State v. Jalo,* 27 Or App 845, 557 P2d 1359 (1976), *rev den* (1977), which involved evidence of prior sexual conduct. We held that application of *former* ORS 163.475(3)[6] (the predecessor to OEC 412) to prevent a defendant from cross-examining a complainant regarding possible bias violated his confrontation rights. *See also State v. Morgan,* 66 Or App 675, 675 P2d 513 (1984); *State v. Reiter,* 65 Or App 304, 307 n 2, 672 P2d 56 (1983). As those cases demonstrate, the requirements of Article I, section 11, are not met simply because, as the state asserts, the defendant had the opportunity to cross-examine the victim before the jury about the specific incident with which defendant was charged. Ordinarily, a defendant must be given the opportunity to impeach a witness on cross-examination.

---

[5] In *Herrera,* the court stated:

"The right of confrontation protects two vital interests of the defendant. First, it guarantees that the defendant has an opportunity to cross-examine the witness against him in order to test his sincerity, memory, ability to perceive and relate, and the factual basis of his statements. This purpose of confrontation helps to assure the accuracy of the result of the truth-determining process by giving the accused an opportunity to test the recollection and sift the conscience of a witness.

"* * * * *

"The second interest of the defendant which the right to confrontation protects is enabling the defendant to demonstrate to the jury the witness' demeanor when confronted by the defendant so that the credibility of the witness is displayed in the courtroom. This second purpose is no less important than the first." 286 Or at 353. (Citation omitted.)

[6] *Repealed by* Or Laws 1981, ch 892, § 98.

A defendant's confrontation right, however, is not absolute.

> "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall, supra,* ___ US at ___ (89 L Ed 2d at 683).

*See also State v. Barrington,* 31 Or App 265, 570 P2d 394 (1977); *Jenkins v. Wainwright,* 763 F2d 1390 (11th Cir 1985), *cert den* ___ US ___ (June 2, 1986); *United States v. Ciro,* 753 F2d 248 (2nd Cir 1985), *cert den* 471 US 1018 (April 15, 1986). Although the Confrontation Clause "tips the scales" in favor of permitting cross-examination if it could reasonably be expected to have an effect on the jury, *Hughes v. Raines,* 641 F2d 790, 792 (7th Cir 1981), a court may prohibit cross-examination for impeachment purposes when the probative value of the evidence that the defendant seeks to elicit is *substantially* outweighed by the risk of prejudice, confusion, embarrassment or delay. *See State v. Lantz,* 44 Or App 695, 702, 607 P2d l97, *rev den* 289 Or 275 (1980); *State v. Leonard,* 707 P2d 650, 656 (Utah 1985);[7] *State v. Caswell,* 320 NW2d 417, 419 (Minn 1982); *see also* Galvin, "Shielding Rape Victims in the State and Federal Courts: A Proposal for the Second Decade," 70 Minn L Rev 763, 858 (1986); Tanford and Bocchino, "Rape Victim Shield Laws and the Sixth Amendment," 128 U Pa L Rev 544, 563 (1980); Caulfield, "The New Oregon Sexual Offenses Evidence Law: An Evaluation," 55 Or L Rev 493, 500 (1976).

 Evidence of prior false accusations by a complainant is certainly probative on the issue of credibility. Courts have uniformly stated that, when a complainant has recanted prior accusations or they are otherwise demonstrably false, the trial court must allow the defendant to cross-examine the complaining witness regarding them. *See State v. Nab,* 245 Or 454,

---

[7] As the court in *Leonard* said:

"[T]he scope of cross-examination as to credibility is and must be broad if it is to fulfill its designated purpose of exposing bias and purging testimony of intended and unintended error." 707 P2d at 656.

421 P2d 388 (1967);[8] *State v. Schwartzmiller,* 107 Idaho 89, 685 P2d 830 (1984); *Thomas v. State,* 669 SW2d 420 (Tex Crim App 1984). When a defendant seeks to use prior false accusations to impeach the complaining witness on cross-examination, some courts have imposed a standard less rigorous than that the prior accusation be demonstrably false. *State v. Kringsted,* 353 NW2d 302, 311 (ND 1984) ("some quantum of evidence"); *Woods v. State,* 657 P2d 180, 182 (Okla 1983) ("reasonable basis"); *Com. v. Bohannon, supra,* 376 Mass at 95 ("factual basis"); *see also* Galvin, *supra,* 70 Minn L Rev at 858.

■ We conclude that, regardless of the prohibitions of OEC 608, the Confrontation Clause of Article I, section 11, requires that the court permit a defendant to cross-examine the complaining witness in front of the jury concerning other accusations she has made if 1) she has recanted them; 2) the defendant demonstrates to the court that those accusations were false; or 3) there is some evidence that the victim has made prior accusations that were false, unless the probative value of the evidence which the defendant seeks to elicit on the cross-examination (including the probability that false accusations were in fact made) is substantially outweighed by ' the risk of prejudice, confusion, embarrassment or delay.

Here the complaining witness had not recanted a prior accusation; neither had defendant demonstrated to the court that the victim had made other accusations that were false. The evidence concerning the 1984 incident showed that the victim continued to claim that the incident occurred, while the alleged perpetrator stated that it had not. The proffered medical report, although not supporting the victim's accusation, does not discredit it in the light of the victim's testimony that the incident did not occur on the same day that her mother took her to the hospital. On the other hand, although it is conflicting, there is *some* evidence from which the court could find that the victim did make a false accusation in 1984. As for the 1981 incident, the evidence that the victim had made a false accusation then was the statement of the mother quoted in the CSD report. The victim testified that she did not make any accusation in 1981. It is not clear from the record

---

[8] The court decided *Nab* under the then existing rule of evidence, not the Confrontation Clause.

that she made any accusation in 1981[9] or that, if she made an accusation then, it was false. There was *some* evidence, however, from which the court could find that she did make a false accusation in 1981.

█ █ The court, therefore, engaged in the balancing discussed above with respect to both the 1984 and 1981 incidents. It noted that an inquiry into each incident could result in significant delay and jury confusion, because there would be a mini-trial to determine if each incident had actually occurred. It also considered that the probative value of the 1981 incident was diminished because of remoteness and because the victim was only four years old at the time. Furthermore, the probative value of the CSD report was weak, because it stated that the mother, not the victim, made the report and that the victim "was unwilling to talk." Moreover, both mother and daughter denied at trial that the incident had occurred or that the victim had made any accusation.

The October, 1984, incident occurred after the September events for which defendant was charged. The court noted that the trauma of an actual incident of sexual abuse can precipitate a child's false accusations of subsequent abuse. If the court had allowed cross-examination as to the 1984 incident, the state would have needed additional time to produce expert testimony respecting the possible traumatic effect of the events, thereby resulting in further delay and possible jury confusion. A determination of whether the 1984 incident occurred could also require consideration of whether the victim was "easy prey" because defendant had previously abused her in September. The determination, therefore, of whether the 1984 incident occurred or whether the victim had fabricated that charge would depend in part on whether the events for which defendant was charged had occurred, rather than *vice versa,* thereby causing further jury confusion.

We conclude that, under the circumstances, the court's decision to prohibit defendant from cross-examining the victim regarding the 1981 and 1984 incidents did not violate defendant's right to confrontation under Article I,

---

[9] Defendant did not seek to impeach the mother concerning the incident.

section 11. Our conclusion is the same under the 6th Amendment. *See Hughes v. Raines, supra; State v. Anderson,* ___ Mont ___, 686 P2d 193 (1984).

Affirmed.