## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## LINDA ANNE BOND,
*Defendant-Appellant.*

Douglas County Circuit Court
12CR1250FE; A156039

388 P3d 391

Peter Gartlan, Chief Defender, and Lindsey K. Detweiler, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Shannon T. Reel, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Hadlock, Chief Judge, and Haselton, Senior Judge.

## HASELTON, S. J.

Defendant was convicted following a jury trial of one count each of first-degree assault with a firearm, ORS 163.185 and ORS 161.610 (Count 2), second-degree assault with a firearm, ORS 163.175 and ORS 161.610 (Count 3), and unlawful use of a weapon (UUW) with a firearm, ORS 166.220 and ORS 161.610 (Count 4), all arising from a single act of domestic violence against her partner, T.[1] On appeal, defendant raises three assignments of error, with the first two challenging the trial court's preclusion of evidence of T's purported prior conduct, and the third asserting that the court committed an "error of law apparent on the record," ORAP 5.45(1), in failing to merge defendant's guilty verdicts for first-degree assault with a firearm and UUW with a firearm. For the reasons that follow, we decline to review defendant's first two assignments of error as unpreserved, but we agree with defendant that the trial court's failure to merge the verdicts on Counts 2 and 4 constituted "plain error" and warrants the affirmative exercise of our discretion under *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991). *See State v. Ryder*, 230 Or App 432, 216 P3d 895 (2009). Accordingly, we reverse and remand defendant's convictions on Counts 2 and 4 with instructions to enter a single conviction of assault in the first degree with a firearm and for resentencing, but otherwise affirm.

Because our grounds of disposition are, essentially, procedural, our preliminary description of the facts is summary. We relate the circumstances pertinent to each assignment of error, in turn, separately below.

Defendant and T lived together in defendant's home in Roseburg beginning in early 2012. Their relationship was, almost from the beginning, contentious and occasionally abusive, including assaultive behavior that did not result in criminal charges. Ultimately, on the afternoon of June 11, 2012—after another contentious and perhaps abusive encounter—defendant seized a loaded handgun, and, in the ensuing altercation, T sustained a gunshot wound to his left chest and lung.

---

[1] The jury acquitted defendant of attempted murder with a firearm, ORS 163.115, ORS 161.610, and ORS 161.405 (Count 1).

Based on that incident, defendant was, as noted, charged by indictment with one count each of attempted murder with a firearm, first-degree assault with a firearm, second-degree assault with a firearm, and UUW with a firearm. As pertinent to our consideration below of defendant's claim of "plain error" regarding failure to merge the guilty verdicts for first-degree assault with a firearm (Count 2) and UUW with a firearm (Count 4), the indictment alleged each of those offenses as follows:

"[Defendant], on or about June 11, 2012 * * * did unlawfully and intentionally cause serious physical injury to [T], by means of a deadly or dangerous weapon, to-wit: a firearm * * *.

"* * * * *

"[Defendant], on or about June 11, 2012 * * * did unlawfully attempt to use unlawfully against [T], a firearm, a dangerous or deadly weapon * * *."[2]

Thus, the indictment alleged the "[a]ttempts to use unlawfully against another" variant of UUW, and not the alternative and disjunctive "or carries or possesses with intent to use unlawfully against another" variant of that offense, ORS 166.220(1)(a).[3] *Compare Ryder*, 230 Or App at 435 (accepting, as "well founded," state's concession that failure to merge second-degree assault and UUW charged under "[a]ttempts to use unlawfully against another" variant constituted "plain error") *with State v. Alvarez*, 240 Or App 167, 171-74 & n 1, 246 P3d 26 (2010), *rev den*, 350 Or 408 (2011) (concluding that trial court did not err in failing to merge attempted first-degree assault and UUW charged under

---

[2] The indictment also alleged, with respect to each of those counts, that "defendant used or threatened the use of a firearm during the commission of this felony." *See* ORS 161.610(2) ("The use or threatened use of a firearm, whether operable or inoperable, by a defendant during the commission of a felony may be pleaded in the accusatory instrument and proved at trial as an element in aggravation of the crime as provided in this section.").

[3] ORS 166.220 reads, in part, as follows:

"(1) A person commits the crime of unlawful use of a weapon if the person:

"(a) Attempts to use unlawfully against another, or carries or possesses with intent to use unlawfully against another, any dangerous or deadly weapon as defined in ORS 161.015[.]"

"carries or possesses with intent to use unlawfully against another" variant; distinguishing *Ryder* on that difference in UUW charging allegations).

At trial, the state presented evidence, consistently with T's account, that defendant, without provocation, had intentionally shot T. Conversely, the theory of defense, to which defendant testified, was that, over the course of their relationship, T had been abusive and periodically violent; that T had been physically abusive towards her on the day of the shooting; that she had armed herself out of fear, in self-defense; and that the gun had accidentally discharged as she and T had struggled for its possession. As described immediately below, defendant unsuccessfully attempted to present evidence of T's conduct involving one of his former wives, R, including the contents of cross-petitions for restraining orders that R and T had filed in a Washington court proceeding. The jury found defendant guilty of all charges except attempted murder, and the court entered separate convictions on each of those counts, imposing concurrent sentences.

On appeal, defendant first assigns error to the trial court's preclusion of evidence of T's conduct towards his ex-wife R—conduct that defendant asserts was relevant to her claim of self-defense. Specifically, defendant asserts *on appeal* that such putative evidence was relevant to establish "a general plan (by T) to commit, and get away with, acts of violence"—and invokes *State v. Leistiko*, 352 Or 172, 187-88, 282 P3d 857, *adh'd to as modified on recons*, 352 Or 622, 292 P3d 522 (2012), in support of that "plan"-based contention. In that regard, defendant contends on appeal as follows:

> "In both relationships (*viz.*, with defendant and R), [T] kicked the women in the buttocks, verbally berated them, accused them of demanding sex from him, and, most significantly, when the women reached out to law enforcement for help, he greeted the responding officers and accused the women of abuse. * * * That [T] accused his abuse victims of domestic violence is more than mere repeated conduct[;] it is evidence of a specific plan and method of covering up his own acts of abuse. That is, [T's] other acts were individual manifestations of a general plan to commit, and get away with, acts of violence.

"As such, the details in both 2006 restraining order petitions and the resulting restraining order were relevant for the noncharacter purpose of proving a plan * * *."[4]

That challenge is utterly unpreserved. Before the trial court, defendant *never* asserted that the evidence relating to R was admissible as substantiating a "plan" for purposes of OEC 404(3). Rather, defendant's sole contention—which she does not renew on appeal—was that the evidence pertained to an asserted "absence of mistake or accident," which is, of course, a distinct, disjunctive basis of admissibility of evidence of "other crimes, wrongs or acts" under OEC 404(3).[5] Before the trial court, defense counsel repeatedly referred to "absence of mistake or accident," asserting that evidence of T's conduct towards other domestic partners, including R, was admissible because T's conduct towards defendant corresponded to a "pattern of behavior that he has done before" and, thus, demonstrated that "[t]his is not a mistake on his part."

"Plan" was never mentioned. Nor, notwithstanding defense counsel's generic, conclusory references to "pattern," does the record disclose any effort to demonstrate why, or how, the proffered evidence satisfied the requisite, exacting "concurrence of common features" of a "spurious plan." *Leistiko*, 352 Or at 188, 188 n 13; *see also State v. Pitt*, 352 Or 566, 579 n 7, 293 P3d 1002 (2012) ("[S]omething more

---

[4] Although defendant's appellate brief also refers to evidence of domestic violence by T against another of his former wives, F, it appears that the trial court admitted most, and perhaps all, of that evidence. In all events, defendant advances no argument on appeal as to the exclusion of evidence pertaining to T's conduct toward F.

Further, although the trial court did not allow defendant to present evidence pertaining to the substance of the allegations of the cross-petitions in the 2006 restraining order proceedings involving R, it did allow defense counsel, for impeachment purposes, to refer to the Washington court's order granting R's petition—specifically, to impeach T's testimony that he had had no domestic violence issues since 2003, when he had been convicted of domestic violence against F and had been required to engage in domestic violence counseling.

[5] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, *preparation, plan*, knowledge, identity, *or absence of mistake or accident*."

(Emphases added.)

is required than mere repeated conduct to establish that a defendant acted pursuant to a plan.").[6]

In sum, defendant raises a new, and qualitatively different, ground of admissibility for the first time on appeal. The matter is unpreserved.[7]

Defendant's second assignment of error is similarly deficient. On appeal, defendant contends that, under the analysis of *State v. LeClair*, 83 Or App 121, 130-31, 730 P2d 609 (1986), *rev den*, 303 Or 74 (1987), defense counsel was entitled to impeach T's credibility by cross-examining him regarding allegations he made in his 2006 cross-petition for a domestic restraining order against R. In that regard, defendant asserts that, because the Washington trial court granted R's petition and denied T's cross-petition, that disposition either necessarily demonstrated that T's prior accusations were false, entitling defense counsel to cross-examine T regarding the substance of those allegations, or, at least, constituted "some evidence" that they were false, compelling the trial court to allow cross-examination unless the court determined that the "probative value [of such cross-examination was] substantially outweighed by the risk of prejudice, confusion, embarrassment or delay." *Id.* at 130; *see also State v. Taylor*, 275 Or App 962, 965-67, 365 P3d 1149 (2015), *rev den*, 360 Or 26 (2016) (affirming preclusion of impeachment of victim, based on purported falsity of prior allegations of domestic abuse, where "the record permit[ted] the trial court's finding that it was not persuaded that the victim had made prior false accusations against [the] defendant," and the trial court's further, ultimate determination that the putative cross-examination "would not be helpful to the jury" was not an abuse of discretion); *State v. Arellano*,

---

[6] The trial here occurred in November 2013, more than a year after the Supreme Court issued *Leistiko* and *Pitt*.

[7] Given our determination in that regard, we imply no view as to whether the proffered evidence would have sufficed to establish a "spurious plan" under the dictates of *Leistiko*, 352 Or at 188 n 13, as more recently elaborated in *State v. Turnidge (S059155)*, 359 Or 364, 439, 374 P3d 853 (2016) (describing "spurious plan" construct as connoting the circumstance in which "prior bad act evidence [is] offered to show that a defendant engaged in a pattern or systematic course of conduct from which the existence of a plan is to be inferred"). Nor do we imply any view as to the asserted relevance of such a purported plan to defendant's theory of self-defense.

149 Or App 86, 90-91, 941 P2d 1089 (1997), *rev dismissed as improvidently allowed*, 327 Or 555 (1998) (refining standards of review of *LeClair*-based determinations; affirming trial court's preclusion of evidence of purported falsity of the victim's prior allegations of sexual abuse).

Here, defendant never invoked *LeClair* or its progeny before the trial court—or even, regardless of specific citation, frame an argument for admissibility comporting with *LeClair*'s prescribed methodology governing admissibility. That is, defendant never argued either, or both, that (1) the court was obligated to render a finding as to whether defendant had "demonstrate[d] to the court" that some or all of the allegations in T's 2006 cross-petition were false, *LeClair*, 83 Or App at 130, or, failing that, (2) that defendant had adduced at least "some evidence that [T] had made accusations that were false," requiring the trial court to engage in OEC 403 balancing with respect to putative impeachment, *id.* Indeed, and to the contrary, to the extent that defendant posited a cogent theory of relevance before the trial court, it was that the allegations of the Washington pleadings, including T's cross-petition, were admissible as *substantive* evidence corroborating the purported "pattern" of a "lack of accident or mistake" in T's interactions with defendant, *see* 283 Or App at 105-06—and not (as in *LeClair, et al*) for purposes of *impeaching* T as an alleged serial purveyor of false accusations of abuse.[8]

In sum, defendant assigns error to the trial court's failure to render determinations relating to admissibility for purposes of impeachment that, as defendant framed the matter before the trial court, were inapposite. The trial court was never called upon to undertake a *LeClair* assessment. Consequently, again, defendant's appellate contention is unavailing as unpreserved.

We turn, finally, to defendant's third assignment of error, which challenges the trial court's failure to merge defendant's guilty verdicts for UUW with a firearm (Count

---

[8] With respect to the substantive, "lack of mistake or accident" theory of admissibility, the trial court determined that the probative value of exploring the details of the 2006 allegations was "substantially outweigh[ed] by confusion * * * of the Jury." On appeal, defendant does not challenge that determination.

4) and first-degree assault with a firearm (Count 2), resulting in a single conviction for the latter crime. Defendant acknowledges that that matter is unpreserved, but contends that, consistently with *Ryder*, the failure to merge constituted "plain error" and that, for the same reasons expressed in *Ryder*, we should exercise our discretion under *Ailes* to remedy that error.

The state does not dispute the substance of defendant's "plain error" contention. Rather, the state's sole response is that the asserted error is unreviewable because defendant either "invited" or "waived" any error.

We agree with defendant. As the state asserts, invited error generally precludes "plain error" review and correction. *See, e.g., State ex rel Juv. Dept. v. S. P.*, 346 Or 592, 606, 215 P3d 847 (2009) ("This court has determined that it will not exercise its discretion to review an asserted plain error if the party seeking review encouraged commission of the error in question * * *."); *State v. Berndt*, 282 Or App 73, 80, 386 P3d 196 (2016) (declining to review alleged "plain errors": "Defendant thus invited the errors of which he now complains, and we therefore do not consider them."). However, the record here contradicts the state's claim of invited error. To be sure, defense counsel informed the trial court that he did not believe that the verdicts for first-degree assault with a firearm *and second-degree assault with a firearm* were "appropriate for merger." But counsel made no comment pertaining to potential merger of the verdicts for first-degree assault with a firearm *and UUW with a firearm*—and his comments pertaining to the first- and second-degree assault counts did not, by necessary implication, endorse failure to merge the UUW and assault verdicts. Thus, defense counsel was not "actively instrumental in bringing about" the alleged error. *Anderson v. Oregon Railroad Co.*, 45 Or 211, 216-17, 77 P 119 (1904).

Nor can defense counsel's silence in that respect be deemed to have somehow preclusively waived "plain error" review. *See, e.g., State v. Page*, 197 Or App 72, 79, 104 P3d 616 (2005), *rev den*, 340 Or 673 (2006) (rejecting state's assertion that purported waiver, by failure to object, precluded "plain error" review: "[I]f failure to object to a ruling

or make an argument amounts to a waiver that this court is powerless to disregard, then there will never be an occasion to review unpreserved error.").

As to the merits, it suffices to say that, given the manner in which UUW was charged in this case (*viz.,* as predicated on the "[a]ttempts to use unlawfully against another" variant) and the analyses and dispositions of *Ryder* and *Alvarez,* including *Alvarez*'s distinction of *Ryder,* 230 Or App at 173 n 1, *see* 283 Or App at 103-04, it was "plain error" not to merge the verdicts on Counts 2 and 4. Although this case involves a conviction for first-degree assault, and not (as in *Ryder*) second-degree assault, the state identifies no principled distinction in the merger analysis and disposition, and we perceive none. *See also State v. Zolotoff,* 250 Or App 376, 377-78, 280 P3d 396, *rev den,* 352 Or 666 (2012) (accepting, as "well founded," state's concession that trial court erred in failing to merge guilty verdicts for attempted first-degree assault and UUW, where both arose from the defendant's "concurrent conduct" in domestic violence episode and the UUW charge was predicated on the "[a]ttempts to use unlawfully" variant). Finally, for the reasons expressed in *Ryder,* 230 Or App at 435, we exercise our discretion under *Ailes* to correct that error.

Convictions on Counts 2 and 4 reversed and remanded for entry of a judgment of conviction for one count of assault in the first degree with a firearm; remanded for resentencing; otherwise affirmed.