Argued and submitted December 20, 2013, affirmed March 11, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

LAMAR ALEX DAVIS,
*Defendant-Appellant.*

Lane County Circuit Court
201115685; A150000

345 P3d 499

Robin A. Jones, Senior Deputy Public Defender, argued the cause for appellant. With her on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Peenesh Shah, Senior Assistant Attorney General, argued the cause for respondent. On the briefs were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Mary H. Williams, Deputy Attorney General.

Before Ortega, Presiding Judge, and DeVore, Judge, and De Muniz, Senior Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Defendant appeals a judgment of conviction for first-degree rape under ORS 163.375 (where a person penetrates another person incapacitated by reason of physical helplessness). He raises three assignments of error; we write only to discuss the first two and reject the third without published discussion. Defendant challenges the trial court's denial of his motion and offer of proof under OEC 412 (evidence of past sexual behavior is inadmissible unless it falls under an exception) to allow evidence of the victim's prior sexual behavior and nonsexual behavior while intoxicated. In defendant's view, the proffered evidence was relevant to the state's basis for the rape charge, which was that the victim was unable to consent to defendant's penetration of her because she was unconscious or passed out from drinking too much. Specifically, the evidence consisted of testimony from the victim's friends that related (1) instances in which the victim would get drunk, have sex, and then not remember having done so and (2) other times where the victim would get drunk and then not recall other kinds of conduct not involving sex. For the reasons explained below, we conclude that the trial court did not err in denying defendant's motion to allow the evidence of the victim's prior behavior and, accordingly, we affirm.

## I.  BACKGROUND

### A.  *Relevant Facts*

At trial, the victim's friend, Shannon, described the sexual assault and surrounding circumstances. In July 2011, Shannon and the victim celebrated the victim's birthday. They drank heavily before visiting some bars in Eugene, where they continued to drink. At about 3:00 a.m., they eventually found their way to the apartment of another friend, Spriggs. Shannon and the victim expected a friend to arrive and take them to another friend's house, but they fell asleep together on a mattress in the living room. Before they fell asleep, Shannon recalled seeing Spriggs and defendant talking together by a window on the opposite side of the living room. Later, another friend, Jason, arrived, and Shannon woke, noticed that the victim was still sleeping on the mattress, and went to use the bathroom. After five to

10 minutes, Jason went to the bathroom to alert Shannon that the victim was "having sex." Shannon testified that, when she returned to the living room, she observed defendant on top of the victim, penetrating her. Shannon asked defendant whether the victim had "[said he] could do that." Defendant replied, "Uh huh." Shannon recalled that she was surprised because the victim had indicated when she was sober that she did not want to have sex with defendant. On the other hand, the victim had told Shannon that she wanted to have "birthday sex."

Shannon observed that as defendant penetrated the victim, the victim's eyes were "a little bit open." Shannon testified that she "couldn't honestly say [whether the victim] was sleeping or not" because she had seen the victim look like that before when the victim was awake but drunk. Shannon heard the victim moaning and initially thought that the victim was consenting to defendant's actions. But believing that the victim would not have had sex with defendant sober, Shannon pulled on the victim's arm to see if the victim was indeed aware of what was happening to her. The victim did not respond to Shannon pulling her arm. Shannon testified that she did not believe that the victim was asleep or passed out but that the victim was "very, very out of it." Shannon went to get Jason and, when they returned, defendant had fled. The victim did not respond when Shannon slapped or lightly tapped the victim's face. Shannon pulled the victim off the mattress, and the victim stood up, walked into a bedroom, and lay down without talking to Shannon. Shannon then left the apartment.

Gilhuber, a police officer who had interviewed Shannon over the phone one or two days after the incident, testified to Shannon's account of events in that interview, which differed in some significant respects from Shannon's trial testimony. Referring to his report from that interview, Gilhuber testified that Shannon reported that she initially believed that the victim was awake when defendant was penetrating her because the victim was moaning. However, according to Gilhuber's report, Shannon slapped the victim a couple of times, pulled her arm, and after a closer look, she determined that the victim was passed out because her eyes were closed and she appeared to be sleeping. Gilhuber also

testified that Shannon also reported having asked defendant, "What the f[uc]k are you doing?" After Shannon went to get Jason to help get defendant off of the victim and after defendant had left, according to Gilhuber, Shannon related that she again tried to move the victim, tapped her numerous times, and then, unable to wake her, proceeded to grab her by the ankle and jerk her off the mattress. At that point, the victim awakened slightly to the point where she got herself to the bed and returned to being completely passed out.

Shannon returned the next morning and recounted to the victim what had happened to her the night before. The victim testified that the last things she remembered about the previous evening were eating after leaving the bar and being at Spriggs's apartment, but after that she was "[j]ust in and out throughout the night." She further testified that her tampon was missing when she woke up and that something "didn't feel right." She felt sore, as if she had been penetrated. The victim testified:

> "Then [Shannon] came in and asked me if I remembered what had happened the night before. I told her, no, because I was really drunk and she said, well, me and Jason walked out here and saw [defendant] having sex with you. I looked at her and I said, 'What?' She goes, yes, you were unconscious, [victim], and from there on, I was pretty emotional."

The victim also testified that she had turned down defendant's advances before and never told him that he could have sex with her.

Shannon and the victim went to the hospital. The sexual assault nurse examiner, Walker, testified that the victim told her that "it didn't feel right down there indicating it felt like [she] had sex, but that couldn't be." Walker also recalled that the victim told her that she did not "remember anything" and said that

> "[the victim] was confused about this and then later in the morning another friend told her that she had come from one of the bedrooms and saw [defendant] 'fucking me while I was asleep.' Then she reports a friend said, ['W]hat are you doing? Stop.['] Then tried to wake other people in the household up but when they wouldn't wake up, her friend left and came back this morning and told me about it."

Walker performed a physical examination, and observed that the victim's genital area was tender and painful. Additionally, the victim's tampon was pushed up against the cervix, which had redness. Walker had to remove the tampon with forceps. Defendant stipulated to the results from the rape kit that conclusively established his DNA from spermatozoa.

The state emphasized in its closing argument that, before the assault, there had been no sign that the victim wanted to have sex with defendant and that Shannon reacted the way she did, under both versions of her story, because she knew that the victim had previously indicated that she did not want to have sex with defendant. The state also characterized its case against defendant as primarily relying on Shannon's personal observations of the nonconsensual nature of the assault, rather than on the victim's inability to remember the assault.

## B. *Defendant's offer of proof*

Defendant moved before trial to offer evidence of the victim's past sexual behavior, specifically that the victim had "engaged in sexual behavior with other men after drinking, and later claimed not to recall that sexual behavior." A victim's past sexual behavior is ordinarily not admissible under OEC 412 unless it falls under one of the exceptions provided by that rule.[1] In defendant's view, the evidence was

---

[1] OEC 412 provides, in part:

"(1) Notwithstanding any other provision of law, in a prosecution for a crime described in *** ORS 163.355 to 163.427, *** the following evidence is not admissible:

"(a) Reputation or opinion evidence of the past sexual behavior of an alleged victim of the crime or a corroborating witness; ***

"*****

"(2) Notwithstanding any other provision of law, in a prosecution for a crime [described in ORS 163.355 to 163.427], *** evidence of an alleged victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless the evidence other than reputation or opinion evidence:

"(a) Is admitted in accordance with subsection (4) of this section [setting out procedural requirements]; and

"(b) Is evidence that:

"(A) Relates to the motive or bias of the alleged victim;

"(B) Is necessary to rebut or explain scientific or medical evidence offered by the state; or

"(C) Is otherwise constitutionally required to be admitted."

"necessary and admissible as it relates to the impeachment of [the victim], and to explain or rebut evidence offered by the state to support its case against *** defendant. Such evidence is also constitutionally required to be admitted." In his offer of proof, defendant did not concede that the evidence was subject to OEC 412. Before trial, the trial court held an *in camera* hearing in which Shannon and Spriggs testified for defendant's offer of proof.

### 1. *Shannon's offer of proof testimony*

Shannon testified that, on her seventeenth birthday, the victim was drunk and "was kind of hitting on some people" and "she was all over guys. We have videotape of it. Her dancing on guys, to a song." At the party they attended, the victim went into a back room with a man, and, when Shannon questioned her about it, the victim "like kind of swatted [Shannon] away." Shannon remembered that the victim "didn't want me to stop it, so I just left." Shannon testified that, when she asked the victim about it the next morning, the victim said that she did not remember their exchange.

Shannon recalled another incident that she did not personally observe but was aware of because it was "a well known story amongst her friends." The story was that the victim went to a house with three men, awoke the next morning in some bushes in Washington Park, and could not remember how she ended up there.

### 2. *Spriggs's offer of proof testimony*

When defendant asked Spriggs if she "recalled a specific instance where [she] observed [the victim] engage in sexual behavior where [the victim] subsequently did not recall [the sexual behavior]," Spriggs replied that one night she had observed the victim at Spriggs's apartment interacting with a man. She described the victim as "[j]ust all in his face, up on him, drunk, you know?" and "[s]miling in his face, hugging on him *** how a drunk girl would act, how your ideal drunk girl would act." Both the man and the victim "were grabbing each other" in a way that looked sexual. Spriggs stated that the victim and the man were in the bathroom together for some period of time, but she did not actually see what occurred in the bathroom. The victim told

Spriggs the next day that she could not remember being in the bathroom.

Spriggs testified about the victim's conduct generally in which she observed "[m]aybe not full on sex, but I know she's—you know—went home from the bar drunk with guys, lots of guys, you know? I mean, I wasn't there obviously because we separated our ways after the bar[.]" When questioned whether Spriggs had observed the victim go home with a man after witnessing "touching or kissing," she replied that she had. Spriggs added that sometimes the victim would remember having sex with the men and "[o]ther times, she'd be like, I don't really remember." Spriggs stated that she had "walked in" on the victim but never personally observed the victim having sex with the men.

Defendant questioned Spriggs about instances of the victim not remembering engaging in nonsexual behavior and she replied that the victim had gotten drunk and "flipp[ed] out on everybody, like my siblings, when we all stay together" or "kick[ed] a cop in the face ***. Her blacking out[.]"

## C. *Offer of proof arguments*

Defendant first argued that the evidence was not covered by OEC 412 because the evidence offered did not concern sexual behavior but rather the victim's pattern of failing to remember her sexual behavior. He also contended that Spriggs's and Shannon's testimony should be admitted as "constitutionally required" because it was exculpatory, given that the offered testimony—evidence of forgotten volitional intercourse while drunk—was similar to the alleged conduct. In other words,

> "specific instances that the witnesses have mentioned are constitutionally required given their strong similarity to what the Defense is alleging happened in this instance, engaging in *** sexualized behavior, either touching or grabbing, the witnesses described as being 'all up in their face.'
>
> "That is very similar to what the Defense is intending to argue occurred in this case; and given that, it is exculpatory. It tends to show that the *** alleged victim is capable of acting in these ways and then not recalling it after the fact.

"I think the key part here is—there's an inference that's drawn by a jury from someone not recalling something afterwards. The inference being that they weren't awake or they weren't conscious."

The state argued that the offered evidence was "classic rape shield evidence" and therefore inadmissible under OEC 412. In other words, according to the state, the evidence was offered to show that, "if [the victim] was doing it with all those other men, she must have consented to having sex with [d]efendant * * *." Also, in the state's view, the evidence did not fall under the "constitutionally required" exception of OEC 412 because it was not relevant: "The victim is going to testify that she was drunk and doesn't remember what happened, so there's no relevance that [d]efendant needs to have this other testimony that she gets drunk all the time and doesn't remember it because she is going to admit it." The state posited as well that the evidence was inadmissible OEC 404 character evidence: "The [d]efense * * * can't argue that since she had sex with men on a bunch of other occasions, she also must have consented to having sex with [d]efendant in this particular case." The state added:

"[Shannon] never saw the victim talking or walking and so she's not going to testify that the victim, in fact, consented, so where is the evidence of consent going to be? It comes from this implication that she is a slut with these other men, so she must have consented with the Defendant on this particular occasion."

The state also contended that the evidence was unduly prejudicial under OEC 403.

The trial court denied defendant's motion "to allow in the 412 evidence." When defendant asked the court to clarify whether nonsexual evidence would be allowed, the court replied that the evidence was excluded for the reasons urged by the state.

## II. DISCUSSION

Defendant's arguments, reprised on appeal, are summarized as follows: (1) The proffered evidence was relevant because the state, relied on the victim's lack of memory

of defendant penetrating her to support its contention that the victim was unconscious at the time; (2) the proffered evidence was not subject to OEC 412 because it was not evidence of "prior sexual behavior" within the meaning of the rule; (3) even if subject to OEC 412, the evidence falls within the exception provided in OEC 412(2)(b) because it is "otherwise constitutionally required to be admitted"; and (4) if the evidence does fall into the OEC 412(2)(b) exception, its probative value is not substantially outweighed by unfair prejudice to the state. The state responds that the proffered evidence was too vague to be helpful or concerned conduct inapposite to the circumstances of the crime in this case. Even if relevant, in the state's view, the marginal relevance of the evidence is outweighed by the state's interest in shielding the victim from disclosure of past sexual conduct. Moreover, the state contends, the evidence is unduly prejudicial under OEC 403 because it would have confused the issues or misled the jury.

In determining whether evidence is admissible in an *in camera* hearing under OEC 412(4), the trial court first decides whether the evidence is relevant. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401. "OEC 401 establishes a 'very low threshold' for the admission of evidence; evidence is relevant so long as it increases or decreases, even slightly, the probability of the existence of a fact that is of consequence to the determination of the action." *State v. Barone*, 329 Or 210, 238, 986 P2d 5 (1999), *cert den*, 528 US 1086 (2000) (quoting *State v. Hampton*, 317 Or 251, 255 n 8, 855 P2d 621 (1993)). We review the court's relevance determination for legal error. *Id.* at 237.

Defendant contends that the proffered evidence is relevant because the jury could draw an inference that the victim was unconscious because she could not remember what occurred. Defendant's proffered evidence of situations when the victim had drunk heavily and did not remember events that occurred when she was conscious counters that possible inference, decreasing the likelihood that the victim

was unconscious in this case. And to the extent that the victim's inability to remember the previous night's events makes it slightly more likely that she was unconscious, the evidence is relevant. Its relevance, as will be explained, is marginal considering the facts of the case.

A part of defendant's proffered evidence, however, is not relevant: Spriggs's testimony of the "well known story amongst her friends that the victim went to a house with three men and ended up in the bushes." Defendant's stated purpose for the proffered evidence is to provide examples of the victim's forgotten conscious and consensual conduct. However, Spriggs's testimony does not describe the victim as being either conscious or consenting to whatever may have occurred before waking up in Washington Park. Accordingly, it neither increases nor decreases the probability of the victim's consent in this case and, thus, is not relevant.

Before we review whether the remaining evidence should have been admitted under the exception provided under OEC 412(2), we address the proffered Spriggs testimony that described the victim getting drunk and exhibiting nonsexual behavior that she did not remember, namely, that the victim was "flipping out on everybody" and "kicked a cop in the face." The state argues that all of the evidence created a danger of confusing the issues and misleading the jury and was therefore subject to a determination by the trial court—reviewed for abuse of discretion—as inadmissible under OEC 403. *See State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999) (a trial court's OEC 403 ruling is reviewed for abuse of discretion). We note here the dissimilarity of the nonsexual conduct at issue—assailing a police officer and "flipping out," which is highly charged confrontational behavior—and the victim's state during the assault in this case, which at most, according to Shannon's trial testimony but not her initial account, consisted of half-opened eyes and some moaning. Given the marginal relevance of the proffered testimony and its dissimilarity to the assault in this case, the trial court did not abuse its discretion in ruling that the nonsexual evidence was inadmissible.

We turn next to the admissibility of the remainder of the proffered evidence under OEC 412. The admissibility

of evidence under OEC 412 is determined by employing the following inquiry:

"First, the court determines whether the evidence concerns a victim's past sexual behavior; if it is does not, OEC 412 does not apply. If the evidence does concern the victim's past sexual behavior, the trial court determines whether it is offered in the form of opinion or reputation evidence; if it is, the court must deny admission. OEC 412(1).[2] If it is offered in some other form, the trial court must determine as a matter of law whether the purpose of the offer fits within one of the exceptions in OEC 412(2)(b); if it does not, again, the trial court must deny admission. Finally, if the evidence fits within an exception, the court must balance the probative value of the evidence against its prejudicial effect."

*State v. Fowler*, 225 Or App 187, 192-93, 200 P3d 591, *rev den*, 346 Or 257 (2009) (citations omitted). In *State v. Wright*, 97 Or App 401, 406, 776 P2d 1294, *rev den*, 308 Or 593 (1989), we defined "past sexual behavior" as

"a volitional or non-volitional physical act that the victim has performed for the purpose of the sexual stimulation or gratification of either the victim or another person or an act that is sexual intercourse, deviate sexual intercourse or sexual contact, or an attempt to engage in such an act, between the victim and another person."

OEC 412 is meant to "protect victims of sexual crimes from degrading or embarrassing disclosure of intimate details about their private lives" and to "encourage victims of sexual misconduct to report and assist in the prosecution of the crime by preventing highly prejudicial evidence from reaching the jury and thus helping to protect jury impartiality." *State v. Lajoie*, 316 Or 63, 69, 849 P2d 479 (1993) (internal quotation marks omitted).

Defendant first argues that OEC 412 is not applicable because the proffered evidence does not concern the victim's past sexual behavior. The crux of his argument is that the proffered evidence only indirectly relates to sexual contact or gratification. He cites *State v. Weeks*, 99 Or App 287, 782 P2d 430 (1989), *rev den*, 309 Or 334 (1990),

---

[2] The state does not argue that the proffered testimony is opinion or reputation evidence.

and *State v. LeClair*, 83 Or App 121, 730 P2d 609 (1986), *rev den*, 303 Or 74 (1987), in support of that argument. In *Weeks*, we concluded that evidence that one of the victims of attempted sexual abuse, a 10-year-old, had asked a five-year-old to pull down the pants of his three-year-old brother and play with the younger brother's genitals, was not evidence of past sexual behavior. 99 Or App at 290. We reasoned that the evidence did not satisfy our definition of past sexual behavior provided in *Wright* because the victim "did not perform any physical act for the purpose of sexual stimulation or gratification of herself or another person." *Id.* In *LeClair*, we concluded that evidence of "previous false accusations by an alleged victim is not evidence of past sexual behavior within the meaning of the Rape Shield Law, and, therefore, is not inadmissible under OEC 412." 83 Or App at 126-27 (emphasis omitted). According to defendant, *Weeks* and *LeClair* "make clear" that "past sexual behavior" means actual physical acts done for sexual gratification and that, in this case, some of the proffered evidence involved acts—namely, "hitting on guys" and "kissing and hugging guys"—that inferentially suggested that the victim was motivated by a sexual objective but were neither "sexual contact" nor "sexual conduct."

Defendant's argument is not well taken. Shannon's testimony that the victim was "all over" or "hitting on" men at Shannon's birthday party preceded her account that the victim went into a room with a man and that she interrupted their sexual encounter. Moreover, Spriggs testified that, after the victim was "all in [a man's] face" and "hugging on" the man in Spriggs's apartment, the victim and the man went into the bathroom together. To suggest, as defendant does, that, because Spriggs did not personally observe what occurred in the bathroom, that testimony does not qualify as sexual contact because the contact must be inferred, is at odds with the clear implication that the victim engaged in sexual conduct; indeed, Spriggs described the bathroom encounter when asked by defendant if she had observed the victim "engage in sexual behavior." It is also at odds with defendant's argument that the purpose of the proffered evidence was to show that the victim "had a recent history of consciously engaging in volitional sexualized behavior while

intoxicated." Indeed, the gravamen of the proffered evidence was to demonstrate that the victim engaged in consensual sex while drunk and later did not remember, which, according to defendant, would make it less likely that she did not consent to the sexual contact at issue. We therefore conclude that the remaining proffered evidence that is relevant or not prejudicial properly falls within the meaning of "past sexual behavior" for purposes of OEC 412.

We must next determine whether the proffered evidence falls within one of OEC 412's exceptions—namely, the exception argued by defendant, which is that the evidence of past sexual behavior is "otherwise constitutionally required to be admitted." OEC 412(2)(b)(C). The constitutional rights asserted by defendant are the rights to confrontation conferred by Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution and the right to due process under the Fourteenth Amendment to the United States Constitution.[3] Included in those rights, according to defendant, is the right to impeach the victim's testimony that "she was unconscious during the intercourse with defendant, because she does not remember the event." Defendant relies on *State v. Herrera*, 286 Or 349, 353-54, 594 P2d 823 (1979), which explains that the confrontation right protects a defendant's right to cross-examination in order to test the witness's "sincerity, memory, ability to perceive and relate, and the factual basis of his statements" and to allow him to show "the witness's demeanor when confronted by the defendant so that the credibility of the witness is displayed in the courtroom." Furthermore, defendant notes that we have held that the right to confrontation "'tips the scales' in permitting cross-examination if it

---

[3] Article I, section 11, of the Oregon Constitution provides, in relevant part:

"In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury * * * to meet the witnesses face to face * * *."

The Sixth Amendment to the United States Constitution provides, in relevant part:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury * * * and * * * to be confronted with the witnesses against him; * * *."

The Fourteenth Amendment provides for the application of the federal right of confrontation to state trials. *Pointer v. Texas*, 380 US 400, 85 S Ct 1065, 13 L Ed 2d 923 (1965).

could reasonably be expected to have an effect on the jury," *LeClair*, 83 Or App at 129 (quoting *Hughes v. Rainer*, 641 F2d 790, 792 (7th Cir 1981)), but acknowledges that the right is limited "when the probative value of the evidence that the defendant seeks to elicit is *substantially* outweighed by the risk of prejudice, confusion, embarrassment or delay." *Id.* (emphasis in original). Thus, in defendant's view, his right to confront the victim includes the right to impeach her testimony with evidence that "she has a history of forgetting or 'blacking out' memories of consensual volitional sexual conduct [that] would provide the jury with substantial reason to conclude that [the victim's] memory loss indicates nothing about whether she was unconscious, and therefore reasonable doubt as to whether the state proved that element of the offense." The state responds that its interest in shielding the victim from inquiry about her prior sexual behavior "far exceeded [the proffered evidence's] minimal probative value."[4] The state does not contend that the evidence does not fall within the constitutional right asserted by defendant but instead claims that the prejudicial effect outweighs its probative value.[5]

We agree with the state. That is so because the victim's conduct preceding the assault in this case has scant

---

[4] The state did not argue at the pretrial hearing nor does it argue on appeal that the proffered evidence was properly excluded because defendant sought to introduce extrinsic evidence. "It is well settled that the right to confront witnesses does not extend to the admission of extrinsic evidence of a witness's prior conduct." *Fowler*, 225 Or App at 195. In *Fowler*, we held that the defendant's constitutional right to confront his witnesses did not extend to admitting under OEC 412 the alleged victim's diary that described her sexual activities with peer-aged boys. *Id.* We therefore proceed to address whether admission of the proffered evidence could qualify as a constitutional necessity even though it might not be permitted under the confrontation right because it is extrinsic evidence of the victim's prior conduct.

[5] Although we conclude that the proffered evidence has some probative value, 269 Or App at 541-42, in that it potentially counters an inference that the victim was unconscious because she had no memory of the incident, we note that the victim never testified that she drew that inference herself, nor did the state expressly draw such in inference in presenting its case. Indeed, the state's case primarily depended on Shannon's eyewitness accounts of the assault and the results of the victim's physical examination performed by Walker. Constitutional necessity arises in the context of the right to cross-examine the victim and impeach her testimony. *Herrera*, 286 Or at 353-54. But the evidence at issue here does not appear to address the victim's testimony; rather, it seeks to contradict an inference that would be drawn from it.

similarity to the proffered conduct described by Shannon and Spriggs. The trial testimony did not include any observation that the victim had made sexual advances of any kind toward defendant. To the contrary, both the victim and Shannon testified that the victim had refused defendant's previous requests for sex. When the victim passed out, defendant was talking with Spriggs. Shannon also testified that, when Jason woke her, she saw that the victim was sleeping. No one saw the victim interact with defendant. That evidence stands in stark contrast to the proffered evidence, which includes examples of the victim clearly demonstrating her attraction to certain men (the victim was "hitting on," "all over," "dancing on," "up on," and "hugging on" guys). Additionally, Shannon provided an example of when she interrupted the victim during a sexual encounter and the victim demonstrably resisted—"swatted * * * away"—Shannon's interruption. That reaction is the opposite of the victim's utter failure to respond when Shannon tapped her face and pulled her arm while defendant penetrated her.

The proffered evidence clearly is the type of evidence that would have the prejudicial effect—"degrading or embarrassing disclosure of intimate details about [victims'] private lives," *Lajoie*, 316 Or at 69—for which OEC 412 is intended to protect victims of sexual abuse. With the dissimilarity of the proffered descriptions of the victim's conduct and the description of the victim's behavior the night of the assault in mind, we conclude that the prejudicial effect of the proffered testimony outweighs its probative value, which in this case, is not significant in light of the trial evidence, the bulk of which consisted of the state's adduction of an eyewitness's accounts of the assault and medical evidence. Accordingly, the trial court did not err in denying defendant's motion to admit the proffered evidence.

Affirmed.