No. 590 November 15, 2023 127

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JESSE ALLEN PETRIE,
*Defendant-Appellant.*

Polk County Circuit Court
20CR34337; A176222

Rafael A. Caso, Judge.

Argued and submitted April 26, 2023.

Kyle Krohn, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

SHORR, P. J.

Affirmed.

**SHORR, P. J.**

Defendant appeals from a judgment of conviction for one count of aggravated harassment and one count of disorderly conduct in the second degree. At trial, defendant primarily relied on the defense of guilty except for insanity (GEI). Defendant assigns error to the trial court's admission of expert testimony describing defendant's past conduct, arguing that the testimony was both irrelevant to the claimed defense under OEC 401 and unfairly prejudicial under OEC 403. For the reasons discussed below, we affirm.

We review a trial court's decision to admit evidence over objections to relevance for legal error. *State v. Serrano*, 355 Or 172, 191, 324 P3d 1274 (2014). When evidence is challenged as unfairly prejudicial, we review a trial court's decision for abuse of discretion. *Id.* at 192.

The facts necessary to resolve this appeal are undisputed. Defendant, while purportedly undergoing a mental health crisis, sat in the middle of the street, blocking traffic. Officers arrested defendant and brought him to jail. At jail, defendant resisted deputies' commands and spat on one of them. Before trial, defendant gave notice of intent to rely on a GEI defense. The court then ordered a "criminal responsibility" evaluation of defendant, which was conducted by a forensic psychologist, Dr. Duncan. Duncan testified in an offer of proof that defendant has antisocial personality traits but no mental disorders that would qualify defendant for a GEI defense. In forming his opinion, Duncan relied, in part, on an incident at a Proud Boys rally where defendant had a confrontation with officers for holding a flag upside down. Defendant brought a motion to exclude evidence related to the rally under two theories: (1) that defendant's conduct at the rally was irrelevant to a consequential fact under OEC 401;[1] and (2) specific testimony referring to the Proud Boys and the upside-down flag would be unfairly prejudicial to defendant under OEC 403.[2] The trial court ultimately excluded

---

[1] OEC 401 provides, "'[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[2] OEC 403 provides, "relevant[] evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of

any testimony referring to the Proud Boys as unfairly prejudicial under OEC 403 but admitted testimony describing defendant's actions at the rally because it was "integral to [Duncan's] analysis *** that the defendant did not have an issue standing up for his rights." Still, to address defendant's concerns regarding the potential prejudicial nature of the upside-down flag evidence, the trial court permitted defendant to propose a limiting instruction that would limit the jury's use of that evidence. Defendant did not ask for that instruction. On appeal, defendant revives his OEC 401 and OEC 403 arguments against admitting any reference to the upside-down flag. We turn to defendant's arguments in the order they were made.

Expert testimony is admissible only if it is relevant under OEC 401. *State v. Brown*, 297 Or 404, 409, 687 P2d 751 (1984). Evidence is relevant so long as it has some probability to establish a fact that is of consequence to the determination of the action. *State v. Davis*, 269 Or App 532, 541, 345 P3d 499, *rev den*, 358 Or 69 (2015). In the case before us, defendant asserted the affirmative defense of GEI. Accordingly, the central factual issue at trial was whether defendant, due to a qualifying mental disorder at the time of engaging in criminal conduct, "lack[ed] substantial capacity either to appreciate the criminality of [his] conduct or to conform the conduct to the requirements of law." ORS 161.295(1). Applying that statutory text, defendant argues that "[t]he fact that defendant once flew a flag upside down at a rally had no bearing on whether he lacked substantial capacity to appreciate the criminality of his later conduct *** or conform his conduct to the law." Defendant further insists that the fact that Duncan relied on the upside-down flag incident to form his opinion is "beside the point."

Taken out of the context of Duncan's expert testimony, we might be inclined to agree with defendant that a prior confrontation with police at a political protest has dubious relevance to defendant's mental capacity at the time of the crimes that he is presently charged with. However, OEC 703 provides that experts, such as Duncan, may rely

---

the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

on facts made known to them in forming their opinion.[3] Although defendant challenges the relevance of Duncan's testimony under OEC 401—not OEC 703—the relevance of the evidence offered by an expert is directly tied to its use by the expert. In other words, we evaluate the admissibility of expert testimony in the context of the expert opinion—not outside it. *See McCathern v. Toyota Motor Corp.*, 332 Or 59, 70, 23 P3d 320 (2001) (holding that evidence of prior acts offered by an expert witness was nonhearsay because that evidence was necessary for the expert to explain their opinion); *see also State v. Goss*, 33 Or App 507, 511-12, 577 P2d 78 (1978) (holding that "other-crimes" evidence, although irrelevant for other purposes, was relevant to the issue of the defendant's mental state because it was an integral part of the expert's diagnosis of the defendant).[4]

In *McCathern*, a forensic engineer who specialized in accident reconstruction testified that the car accident in that case was "substantially similar" to several other car accidents involving the petitioner-manufacturer. 332 Or at 67. To explain his reasoning, the expert disclosed details of the other car accidents, to which the petitioners objected. *Id.* at 70. The petitioners argued that details of the other car accidents were hearsay, and thus inadmissible under OEC 801. *Id.* The court disagreed and held that evidence of the other accidents was admissible because "[the respondent] offered the evidence of the details surrounding the 15 other

---

[3] OEC 703 provides,

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

Defendant does not contend under OEC 703 that the evidence that the expert relied upon is not of the type reasonably relied upon by experts in the field. Defendant also does not contend that the expert evidence was inadmissible under OEC 702, because it would not assist the trier of fact. *See State v. Jesse*, 360 Or 584, 385 P3d 1063 (2016) (concluding that trial court did not err in excluding expert testimony that was unhelpful to the jury, because the testimony was only relevant to a conditional fact not ultimately put at issue). We therefore do not consider those issues.

[4] Defendant contends that *Goss* is no longer good law because the decision predates the legislature's adoption of the Oregon Evidence Code. We conclude that the principle stated in *Goss* is consistent with OEC 703 and the subsequent case law interpreting that rule.

rollover accidents only to provide the foundation necessary to explain [the expert's] opinions, not for its truth." *Id.*; *see also State v. Thomas*, 279 Or App 98, 379 P3d 731, *rev den*, 360 Or 423 (2016) (statistical evidence not admissible as non-hearsay when expert did not rely on that evidence in forming the basis of their opinion). In the case before us, defendant argues that we should construe *McCathern* to apply narrowly to hearsay objections. Our reading of *McCathern* is not so narrow. Instead, *McCathern* illustrates our practice of evaluating objections to evidence introduced through expert testimony within the context of the expert's opinion. In *McCathern*, the expert testimony was objected to as hearsay under OEC 801. As is our practice, the court determined the nonhearsay purpose of the evidence by evaluating how the evidence was used to develop the expert opinion. Here, defendant objects to evidence relied on by Duncan (regarding defendant flying the upside-down flag at the rally) as irrelevant under OEC 401. Thus, the appropriate question before us is whether the upside-down flag evidence was relevant as a foundation for Duncan's opinion. We conclude that it was.

Duncan established the relevance of the upside-down flag incident when he testified that he believed there was a nexus between defendant's behavior at the rally and the essential elements of defendant's GEI defense. Duncan opined that defendant's history of being able to conform his conduct to the law, while passionately standing up for his rights in confrontational scenarios with police (such as the upside-down flag incident), suggested that defendant had the mental capacity to appreciate the criminality of his conduct when he spat on a deputy. Defendant contends on appeal that Duncan's testimony was not relevant because "Duncan acknowledged that he could give his opinion without discussing the flag incident." Defendant slightly misstates the trial court record. The trial court judge asked whether Duncan could reach his conclusion without relying on defendant's "political views." Duncan responded that he could, so long as he could rely on defendant's "history of passionately defending himself" while conforming his conduct to the law. Accordingly, Duncan testified about the upside-down flag incident as follows:

"Q [by the state]:   Did he provide you with any other instances of being challenged by authority?

"A:   Yes.

"Q:   When was that?

"A:   So he volunteered, you know, going to political rallies. And so that was—the exact date was before this incident.

"But essentially, you know, he stopped working when he was 49 due to primarily medical reasons and then started attending these rallies. He talked about one incident where he's at a rally and, you know, flying his flag upside down. Police, you know, confront him about that, telling him to put the flag down and his not doing that, refusing to do so and then recording the officer as that was unfolding.

"Q:   Why is that significant here?

"A:   Well, during that line of questioning he's also, you know, talking about how he doesn't have a problem standing up for his rights. You know, that sort of thing.

"So what it's telling me is that, you know, it's telling you how he's spending his time, you know, going to these rallies. That that has involved previous confrontation by law enforcement and that he's been oppositional.

"Also, that he values, you know, again, he—he stands up for himself. He values, you know, that self-determination.

"Q:   Do you know if during this confrontation whether criminal charges stemmed from that?

"A:    I don't think there were.

"Q:   Is that indicative of a choice to engage with law enforcement?

"A:   Yes.

"Q:    Is that indicative of a pattern of engaging with law enforcement?

"A:    I mean what—so what we know if that there is, you know, this one incident that he talked about. He's attending other rallies where likely law enforcement are present.

"And then this incident happens, you know, several few—a few years later where I, you know, opine that he's

able to, you know, maintain—he appreciates what he's doing at the time. He's oppositional towards authority. He's not acutely mentally ill."

Because Duncan's testimony regarding the rally was limited to facts relevant to explaining his ultimate opinion on defendant's mental state, we conclude that the trial court did not err in admitting his testimony as relevant foundation for his expert opinion. In other words, the incident was probative of whether defendant had a qualifying mental disorder because the expert's ultimate opinion regarding defendant's mental status used that incident as part of the foundation to support his testimony. OEC 401. We now turn to defendant's OEC 403 argument.

Expert testimony may be unfairly prejudicial under OEC 403. *McCathern*, 332 Or at 71. We review a trial court's OEC 403 ruling for abuse of discretion. *Id.* In relevant part, OEC 403 provides that evidence may be excluded if its "probative value is substantially outweighed by the danger of unfair prejudice"; whereas "discretion" refers to the authority of a trial court to choose among several legally correct outcomes. *State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000). Thus, to determine whether the trial court abused its discretion in the case before us, we review its OEC 403 ruling to ensure that it conducted the required OEC 403 balancing. From there, we determine whether the trial court reached a legally permissible outcome. We conclude that it did.

The trial record reflects that the trial court conducted the required OEC 403 balancing test. The trial court granted defendant's motion to exclude evidence related to defendant's "political views" because admitting the evidence "would be substantially prejudicial with very little probative value in this case." Applying the same test, the trial court admitted the testimony regarding the upside-down flag incident because it was "more integral to [Duncan's] analysis *** that the defendant did not have an issue standing up for his rights."[5] In other words, the court engaged in a 403 balancing process and exercised its discretion in excluding

---

[5] As previously noted, the trial court also invited defendant to propose a limiting instruction, which defendant declined to do.

some evidence while concluding that other evidence from the rally was not so unfairly prejudicial as to substantially outweigh its probative value to the expert's opinion. For those reasons, we conclude that the trial court did not abuse its discretion in determining that the probative value of the doctor's description of defendant's actions at the rally was not substantially outweighed by the danger of unfair prejudice. Accordingly, the trial court did not err in admitting that testimony.

In sum, we conclude that the trial court did not err in denying defendant's motion to exclude evidence describing defendant's actions at a rally, including holding an upside-down flag, because that evidence is relevant to the expert's opinion and its probative value is not substantially outweighed by the danger of unfair prejudice.

Affirmed.